**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **R.H., by his guardian and next friend,** ) | |
| **RATHEL HOUSEWIRTH; and** ) | |
| **REHABILITATION AND VOCATIONAL** ) | |
| **EDUCATION PROGRAM, INC., an Illinois** ) | |
| **not-for-profit corporation,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **No. 16-cv-1234** |
| **v.** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **CITY OF ANNA, ILLINOIS, an Illinois** ) | |
| **municipal corporation,** ) | |
| ) | |
| **Defendant.** ) | |

**COMPLAINT**

## I.   INTRODUCTION

1.      This is an action for declaratory and injunctive relief and for damages brought

pursuant to the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended

("FHA"), 42 U.S.C. § 3601 *et seq*., Titles II and V of the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12101 *et seq*., and its implementing regulation 28 C.F.R. Part 34, and

Section 504 of the Rehabilitation Act of 1973 (Section 504), as amended, 29 U.S.C. § 794 *et*

*seq*., and its implementing regulation 24 C.F.R. Part 8.  Defendant City of Anna, Illinois ( the

"City") discriminated against Plaintiffs on the basis of disability as follows: 1) by imposing a

zoning ordinance that has a disproportionately adverse effect on disabled individuals; 2) by

intentionally and wrongfully denying the building permit application and special-use permit

application submitted by Plaintiff Rehabilitation and Vocational Education Program, Inc.

("RAVE"), and 3) by refusing to make the reasonable accommodations to its rules, policies, and

practices necessary to afford Plaintiffs and other individuals with disabilities an equal

opportunity to live in a residential neighborhood.  Under these discriminatory policies, the City

prevented the operation of a small community home that was intended to house four individuals

with developmental disabilities, including Plaintiff R.H.  As such, Defendant City of Anna's

engaged in a practice of discrimination on the basis of disability in violation of the FHA, ADA

and Section 504.

## II.     JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343;

42 U.S.C. §§ 12133 and 12134; and 42 U.S.C. § 3613.  Appropriate declaratory relief is authorized

by 28 U.S.C. §§ 2201 and 2202.

3.      Venue is proper in this Court because all the parties are located in the Southern

District of Illinois and the acts described herein took place within the Southern District of Illinois.

## III.    PARTIES

4.      Rehabilitation and Vocational Education Program, Inc. is a not-for-profit

corporation, organized and existing under the laws of the State of Illinois, with its principal place

of business located at 214 W. Davie Street, Anna, Illinois 62906.

5.      Plaintiff R.H. is an adult person who resides in Union County, Illinois.  R.H. is

developmentally disabled and is a "handicapped" person within the meaning of 42 U.S.C. §

3602(h).  R.H. has been determined to be incompetent, thus Rathel Housewirth, his legal

guardian and next friend, brings this action on his behalf.

6.      Defendant City of Anna, Illinois is a city within the Southern District of Illinois

that is organized under laws of the State of Illinois and is a body politic and corporate.

## IV.   STATEMENT OF THE CASE

*Defendant's Zoning Ordinance*

7.      Defendant exercises zoning authority over land within its boundaries, including the tracts of real property owned by RAVE that are the subject of the special-use permit described herein.  Defendant's zoning ordinances include the following:

a.   SECTION 4.  Definitions:

4.13 - Family. One (l) or more persons related by blood, marriage or adoption, together with his or their domestic servants, maintaining a common household in a dwelling.

b.   SECTION 7.  R-1 One-Family Residence District. The following regulations shall apply in the R-1 One-Family Residence District:

7.01 - Permitted Principal Uses. The permitted principal uses are:

7.011 - One-family detached dwellings.

7.012 - Public and civic parks and playgrounds...

7.05 - The following uses may, subject to the granting of a Special Use Permit in accordance with Section 19 hereof, be permitted in the R-1 district:

7.051 - (a) Essential services.

(b) Any buildings or structures occupied by or used for churches, Sunday schools, public libraries, and similar not-for-profit cultural uses.

c.   SECTION 8.  R-2 One and Two-Family Residence District. The following regulations shall apply in the R-2 district:

8.01 - Permitted Principal Uses. The permitted principal uses are:

8.011 - Any use permitted in the R-1 district.

8.012 - Two-family dwellings...

8.02 - Special Uses. The following uses may, subject to the granting of a Special Use Permit in accordance with and pursuant to Section 19 of this ordinance, be permitted in the R-2 district.

3

8.021 - Any use classified as a special use in the R-1 district.

d. SECTION 9. <u>R-3 General Residence District</u>. The following regulations shall apply in the R-3 General Residence District:

9.01 - Permitted Principal Uses. The permitted principal uses are:

9.011 - Any use permitted in the R-2 district.

9.012 - Dwellings for any number of families.

9.013 - Rooming houses.

9.014 - Day nurseries, nursery schools, or child care centers.

9. 015 - Tourist homes, motels and motor hotels; provided, however, that such uses are located on lots abutting state or federal highways.

9.016 - Offices of civic, religious or charitable institutions financial or insurance companies, physicians, dentists, architects, engineers, attorneys, real estate and similar professions, but not selling merchandise on the premises.

9.02 - Special Uses. The following uses may, subject to the granting of a Special Use Permit in accordance with and pursuant to Section 19 of this ordinance, be permitted in the R-3 district:

9.021 - Mobile home parks.

9.022 - Hospitals, sanitariums, and nursing homes; provided, however, that no penal or correctional inmates are regularly housed therein.

9.023 - Municipal cemeteries.

9.024 - Public and civic parks and playgrounds.

9. 025 - Any use permitted as a Special Use in the R-2 district.

9. 026 - Country clubs, golf courses, similar recreation areas, and private clubs and lodges.

8.     Defendant City of Anna's Zoning Code does not include a definition for group homes or community-based residential facilities for disabled individuals.

4

9.     While, the Zoning Code does not account for group homes or community based residential facilities for disabled individuals, it defines "nursing home" and "rooming house" as follows:

  a. 4.35 - <u>Nursing Home</u>. A private home, institution, building, residence, or any other place, whether operated for profit or not, or a county home for the infirm and chronically ill operated pursuant to "The County Home Act," as now or hereafter amended, or by the General Assembly of the State of Illinois, or by a county pursuant to "An Act in relation to homes for the aged," approved by the General Assembly July 21, 1959, as now or hereafter amended by them, or any similar institution operated by a political subdivision of the State of Illinois, which provides, through its ownership or management, personal care, sheltered care or nursing for 3 or more persons not related to the operator or owner by blood or marriage. It includes skilled nursing facilities and intermediate care facilities as those terms are defined in Title XVIII and XIX of the Federal Social Security Act, 42 U.S.C.A. Sec. 1395 et seq. Personal care is defined as provision of assistance with meals, dressing, movement, bathing or other personal needs or maintenance, or general supervision and oversight of the physical and mental well-being of an individual who is incapable of managing his person whether or not a guardian has been appointed for such individual. Sheltered care means maintenance and personal care. Maintenance means food, shelter, and laundry services. Nursing means provision of care by a registered nurse or licensed practical nurse.

  b. 4.37 - <u>Rooming House</u>. A single unit dwelling occupied by a permanent resident family and two or more other persons not members of said family; or, a single unit dwelling occupied by more than two persons who are not related to each other in a family; or, a building containing two or more dwelling units, one or more of which units is occupied by a permanent resident family and two or more persons who are not related to the family; or, a building containing two or more dwelling units, at least one of which is occupied by more than two persons who are not related to each other in a family; or, residential buildings when a lot contains two or more residential buildings, no more than one of which contains a dwelling unit or units as defined in this section and the buildings are occupied in sum by a permanent resident family and two or more persons who are not members of said family; or, residential buildings when a lot contains two or more residential buildings no more than one of which contains a dwelling unit or units as defined in this section and the buildings are occupied in sum by more than two persons who are not related to each other in a family; or, any portion of a building other than as referred to elsewhere in this section which is occupied by a permanent family and two or more persons who are not members of the family; or, any portion of a building other than as referred to elsewhere in this section much is occupied by more than two persons who are not related to each other in a family; however, a dormitory, motel, or hotel shall not be

deemed to be a rooming house. For the purposes of this section "to occupy" means the use or possession or the right to the use or possession of the premises referred to, and "to occupy" includes "to propose to occupy"; and "permanent resident" means any person or persons who occupy or have the right to occupy any portion of a dwelling for at least thirty (30) consecutive days.

## *RAVE's Group Home Project*

10.     RAVE is a nonprofit agency in Union County, Illinois that provides vocational and residential services to adults with developmental disabilities. One of its primary activities is to provide residential and habilitation services and assistance to persons with intellectual and developmental disabilities, which is designed to integrate such persons into the community.

11.     All of the individuals who participate in RAVE's programs have a physical or mental impairment that originates before age 18 and substantially limits one or more of such person's major life activities. The most common developmental disabilities of clients served by RAVE are mental retardation, autism spectrum disorder, cerebral palsy, and epilepsy.

12.     RAVE currently provides residential services to approximately sixteen individuals in three existing group homes, which are located just outside the city limits of Jonesboro, Illinois. The three existing homes are called CILA 1, CILA 2 and Peachtree. CILA 1 and CILA 2 house four individuals each, while Peachtree houses eight individuals.

13.     All of RAVE's group home residents are developmentally disabled and require assistance from RAVE staff to perform activities of daily living, like bathing, dressing, eating, and managing their medical needs. RAVE staff is present at all times the residents are present in their group home. Due to their severe disabilities and the level of in-home support they require, RAVE's group home residents have very few, if any, residential alternatives.

14.     In addition to residential services, RAVE also serves approximately 85 persons in its sheltered workshop program in Anna, Illinois. Most of RAVE's group home residents also

6

participate in the sheltered workshop. Currently, residents are bussed back and forth between the group homes in Jonesboro and the sheltered workshop located at 214 W. Davie Street in Anna five days a week.

   15. All of the group home residents served by RAVE have incomes limited to Social Security Disability Income, Supplemental Security Income, and the wages earned in the sheltered workshop.

   16. Providing supportive housing to individuals with developmental disabilities is an important part of RAVE's mission. When a person with a developmental disability grows older or suffers impairments that interfere with activities of daily living, RAVE's goal is to maintain the person in a residential setting in the community rather than in an institution or nursing home. RAVE's residential services provide the only means by which most of its clients can live in a residential setting, either because they need supportive services, for financial reasons, or both.

   17. Funding from the Illinois Department of Human Services is available to organizations like RAVE to permit the development of small group homes of eight or fewer persons pursuant to the Community Integrated Living Arrangement ("CILA") program. The CILA program is a Home and Community-Based Services Waiver Program funded in part by Medicaid, 42 U.S.C. § 1396n(c)(1), and is designed to permit persons with developmental disabilities who would otherwise be eligible to reside in institutions to live in the community.

   18. RAVE's board of directors sought for several years to expand the residential services provided by the agency. Such expansion is important and necessary as many of RAVE's clients are adults with disabilities who live with aging parents and have no other residential options when their parents are no longer able to take care of them. Further, most of the state-operated

facilities in Illinois have closed or reduced in size, and the former residents of those facilities are now seeking local, residential options.

19.     In January 2016, RAVE purchased two parcels of real estate in Anna, Illinois for the purpose of developing two new group homes that would each house four adult persons with developmental disabilities. One parcel is located at 101 Michaelson Lane and the other parcel is located at 418/420 W. Davie Street. RAVE purchased the Michaelson lot for $20.500.00 and the two lots on Davie Street for $23,000.00. Both parcels are located in one and two-family, residential neighborhoods, which are zoned by the City of Anna as R-2 districts.

20.     In January 2016, RAVE also purchased two manufactured homes from New Horizons Homes in Nashville, Illinois, at a cost of $200,500.00 each, to locate on the two real estate parcels. The two proposed group homes are compatible with other land uses in the area. The group homes are designed to resemble other single-family residences in the neighborhood. From the exterior of the group homes, there is nothing to indicate they will be occupied by persons with disabilities.

21.     The homes were constructed in halves and currently sit at the New Horizons Homes' office in Nashville until they can be moved to the lots in Anna and assembled. The four halves were recently rewrapped with plastic on the open sides in order to prevent as much environmental damage as possible. The longer the halves sit unassembled, vacant, and unheated, the more likely the homes will be damaged by wind, water or other environmental hazards.

22.     RAVE anticipated some or all of the current residents at the Peachtree group home would move into the new group homes in Anna, Illinois. The Peachtree location is in need of plumbing and HVAC repairs and also requires extensive repairs to the floor, kitchen counters

and trim throughout the home as well as repainting inside and out. RAVE wishes to make these repairs as soon as possible in order not to jeopardize its CILA license.

23.     After the Peachtree residents are relocated to the new homes in Anna, RAVE plans to make necessary repairs and renovations to the Peachtree home in order to prepare the home for future group home residents. In order to make these repairs, the Peachtree residents must have somewhere else to live. The current residents wish to move out of the Peachtree home and into a more modern home that is closer to the community in which they work.

24.     The Peachtree location, as well as the other two RAVE group homes, is located on a 12-acre parcel of real estate on the outskirts of Jonesboro, Illinois. The homes are located near a busy highway where there are no sidewalks, so it is not safe for residents to walk off the premises. There are also no stores or amenities nearby. Many of the Peachtree residents are very social and would benefit from the opportunity to be more integrated in the community.

25.     All of the proposed residents of the W. Davie Street group home, including Plaintiff R.H., intend to live together as a family unit, sharing meals and recreational and leisure activities. All of the proposed residents will continue to work at the sheltered workshop operated by RAVE. All residents of the proposed group homes intend for this to be their permanent home.

26.     Plaintiff R.H. was selected by RAVE to live at the W. Davie Street group home in Anna, Illinois. R.H. is a 46-year-old male who lives in RAVE's Peachtree group home. He is developmentally disabled, having been diagnosed with mental retardation at infancy. R.H.'s disability is further complicated by hypertension and diabetes. Because of his disability, R.H. is unable to make basic decisions for himself without assistance. Further, R.H. is unable to schedule or administer the medications he requires several times a day or manage his finances and public benefits.

27.     R.H. has worked at the RAVE sheltered workshop for almost ten years. He has also participated in RAVE's supported housing program for over nine years. R.H. wants to continue to receive residential and vocational services from RAVE and his mother and legal guardian, Rathel Housewirth, supports his plan. R.H. is especially eager to move to the group home in Anna, Illinois because he wants to live closer to work. Additionally, there are more social opportunities for R.H. in Anna. There are many more amenities he can enjoy and more places he can walk safely. R.H. would especially like to be able to visit with his friends from the workshop who live in other CILA homes in town, which he cannot do at the present time. Ms. Housewirth wants R.H. to move out of the isolated group home in Jonesboro and "into town" in Anna where there are many more things he can do in the community, like going shopping, eating at local restaurants, visiting friends, or taking walks in the park.

*The Zoning Dispute*

28.     After purchasing the properties on W. Davie Street and Michaelson Lane and the two manufactured homes, RAVE submitted building permit applications for each of the properties to the City of Anna on or about February 12, 2016. RAVE applied for the permits in order to begin construction of the cement foundations on which the two manufactured homes would sit.

29.     After RAVE submitted the application for the building permits, Defendant City of Anna delayed voting on the application for months without explanation. RAVE's permit application was on the agenda for several City Council meetings but the Council failed to take a vote even though a quorum was present.

30.     While no vote was held, each Council meeting began with an opportunity for public comment. During these periods of public comment, there was significant community

opposition to the RAVE permit applications, particularly in relation to the Michaelson Lane property. The arguments against granting the building permit were mainly to the effect that these new group homes are "illegal" according to the City of Anna's Zoning Code because they are located in a neighborhood zoned R-2, which are supposedly restricted to single and two-family homes. There was also significant opposition to the effect that the developmentally disabled individuals who would live at the homes might be sexually dangerous predators who would endanger members of the community. There was also concern that the manufactured homes would not look like the rest of the neighborhood and the residents' presence would increase traffic congestion.

31.     This public concern was unwarranted and paradoxical. Prior to RAVE's purchase of the lot, the W. Davie Street property had been a nuisance in the City of Anna for many years. The former owners divided what had been a single family home into four apartment units. When RAVE purchased the property and inspected the building, it found a dilapidated dwelling with mold, water damage and various severe structural problems. RAVE immediately demolished the building and cleaned up the property for the first time in more than a decade. Additionally, many of the residents living in the apartments prior to RAVE's purchase of the property were ex-felons and registered sex offenders and police were often called to the premises. Further, the Jonesboro group home residents have been bussed to and from RAVE's workshop located on W. Davie Street for years and there have been no issues with traffic congestion. Finally, the claim that group homes were not allowed in R-2 zoning districts was not compatible with the fact that Defendant City of Anna allowed the former owners to operate a four-unit apartment on the property. RAVE also knew of other group homes for developmentally disabled persons located in R-2 neighborhoods.

32.     After significant delay, the City Council voted unanimously to deny the building permit applications on April 5, 2016. City Administrator Steve Guined notified RAVE of the City of Anna's decision via written correspondence on April 8, 2016. The letter contained no explanation for the denial. It simply said the permit application had been denied. There was a yellow sticky note on the letter written by City Clerk Tina Sadler, which directed RAVE's CEO, Gary Griffith, to call the City Attorney John Foley if he had questions about the City of Anna's decision. When Griffith contacted Foley, he was told RAVE had to obtain a special use permit for the lots since they were located in R-2 neighborhoods.

33.     RAVE filed a special-use permit application with the City on June 3, 2016. The permit concerned only the lots on 418 and 420 W. Davie Street. RAVE decided to file the application for the W. Davie Street property first because it was the parcel with the least community opposition. The permit application was accompanied by architectural plans and specifications for the new home, as well as a request for reasonable accommodations from the City's Zoning Code. The application stated that the proposed home will comply with all building and zoning code requirements of the City of Anna, except that four unrelated persons – rather than one – intended to reside in each home.

34.     A public hearing on Plaintiff's special-use permit application was held before Defendant's Zoning Board of Appeals on July 18, 2016. According to Defendant City of Anna's Zoning Code, its Zoning Board of Appeals is required to conduct a public hearing and issue an advisory report to the City Council concerning all applications for a special-use permit.

35.     Testimony was taken at the Zoning Board of Appeals hearing, including testimony Gary Griffith, requesting, if a special use permit could not be granted, that the City

grant RAVE a reasonable accommodation from its zoning rules, policies and practices so that four unrelated persons could reside in the group home.

36.   Neighbors of the proposed group homes appeared at the foregoing hearing to complain about RAVE's application.  The complaints of the neighbors were irrational and based upon groundless fear of persons with disabilities.  The objections did not pertain to the request for reasonable accommodation but instead with the very existence of the group homes.  The objectors claimed that the group homes were inconsistent with the neighborhood character, that the group homes would decrease property values, that group homes were not permitted in R-2 neighborhoods, that RAVE was asking the City of Anna for a "favor" that it did not deserve, that RAVE did not maintain one of its existing group homes outside Jonesboro in a neat and clean manner, that the bus transporting the residents to and from work would cause congestion, that the group home residents would be noisy and disturb the neighborhood, and that the group home residents would likely be sexual predators.

37.   In response to these objections, Griffith advised the Zoning Board that, as specified in the special use permit application, no registered sex offenders would be allowed to live in the group home.  Griffith also told the Board that all of the potential residents had been RAVE clients for years and none of them were a nuisance or a danger in the community. Griffith told the Board that all of the existing group homes were kept in a neat and clean manner. He told the Board that the "unkempt group home" the neighbors objected to was actually a trailer used as an office by RAVE staff.  Griffith told the Board that the office is located on secluded, private property outside the city limits of the City of Jonesboro and is not visible from the highway or from anywhere the public can observe it.  Any public comment about the trailer in question would have to come from individuals who trespassed on RAVE property.  Griffith also

advised the Board that two busses would continue to transport the residents to the workshop in the morning and in the afternoon, as they had done for years, so there would be no additional traffic congestion. Finally, Griffith told the Board that RAVE purchased the lots in a R-2 district because he knew of at least one other group home that recently opened in a R-2 district.

38.     At the conclusion of the hearing, Defendant Village's Zoning Board of Appeals voted to 5-0 recommend denial of RAVE's special-use permit application. The Board's decision did not address RAVE's request for a reasonable accommodation but found, among other things, as follows:

      a.   Section 4.13 of Ordinance 81-2 defines "Family" to be one (l) or more persons related by blood, marriage or adoption, together with his or their domestic servants; maintaining a common household in a dwelling.

      b.   The lots in question are zoned R-2, which permits One and Two Family residences.

      c.   RAVE's request is for a single residence to be permanently inhabited by four (4) persons not related by blood, marriage or adoption.

      d.   The interested citizens from the affected neighborhood unanimously oppose the requested zoning modification, believing it would undermine the intended R-2 use of property.

      e.   RAVE knew, or should have known, of the R-2 zoning requirements at the time that it acquired the property in question.

      f.   There are numerous other sites located within the City of Anna which are available and zoned so as to permit a four (4) person CILA group home such as requested by RAVE.

      g.   The complementary [sic] presentation made by RAVE, and it's [sic] representative, were contradicted by comments and observations as to the conditions present at RAVE's existing group home in the neighboring community of Jonesboro, Illinois.

39.     The July 18th recommendation of the Board was then referred to the City Council, as, pursuant to Defendant's Zoning Ordinance, the Council has final authority on zoning matters

and all special-use permit applications. Thereafter, RAVE again asked the City for a reasonable accommodation from its rules, policies and practices, including its zoning ordinance, in case the City Council decided it could not issue a special use permit under the provisions of the zoning code. Thereafter, the Council was supposed to vote on RAVE's application at its upcoming bi-monthly meeting, yet, various meetings were held and each time the Council made a new excuse not to hold the vote. RAVE eventually advised the City that it would consider its permit application denied if the Council did not make a final decision by September 20, 2016.

40.     RAVE's special-use permit application was finally heard by the City Council on September 20, 2016. On that date, the City Council voted to go into executive session on the basis of a threatened lawsuit against Defendant City of Anna. Thereafter, upon returning to public session and without any public discussion, the City Council unanimously voted to deny the special-use permit. The City Council gave no reason for its decision.

*Defendant City of Anna's Violations of the FHA, ADA, and Section 504 of the Rehabilitation Act*

41.     Defendant City of Anna intentionally discriminated against Plaintiffs because the would-be-residents of the Davie Street group home are disabled.

42.     Defendant's Zoning Ordinance has a disparate impact on people with severe disabilities who require a community-based, residential facility in order to avoid institutionalization.

43.     Under Defendant's Zoning Code, group home facilities are not permitted in R-1 or R-2 districts. Per the code, special use permits are only available in these neighborhoods for "buildings or structures occupied by or used for churches, Sunday schools, public libraries, and similar not-for-profit cultural uses." On its face, this restriction prevents group homes from opening and operating in most residential neighborhoods in the City of Anna.

44.     Defendant refused to grant a reasonable accommodation to permit construction and operation of the proposed W. Davie Street group home when it denied RAVE's building permit and subsequent application for a special-use permit.

45.     In doing so, Defendant refused to make reasonable accommodations to its rules, policies, and practices, which were necessary to afford Plaintiffs and other individuals with disabilities an equal opportunity to use and enjoy a dwelling in a residential neighborhood.

46.     The accommodations requested would not have imposed an undue administrative burden or expense upon Defendant and would not have resulted in a fundamental alteration of Defendant's Zoning Ordinance, since the group home is compatible with the residential character of the neighborhood and since Defendant has permitted four unrelated individuals to live in single and two-family residential districts in the past.

## V.     CAUSES OF ACTION

### COUNT ONE: FAIR HOUSING ACT

47.     The allegations listed above are incorporated herein by reference.

48.     The proposed group home is a "dwelling" within the meaning of 42 U.S.C. § 3602(b).

49.     The prospective residents of the home, including Plaintiff R.H., are "handicapped" within the meaning of 42 U.S.C. § 3602(h).

50.     Because Anna's City Council is vested with the final authority for zoning decisions, the City Council's actions described above constitute the policy of Defendant City of Anna and were taken under color of state law.

51.     Defendant City of Anna's actions described above constitute:

16

    a.  discrimination in the sale or rental, or otherwise making unavailable or denying a dwelling because of disability in violation of the FHA, 42 U.S.C. §3604(f)(1);

    b.  a refusal to make reasonable accommodations in rules, policies, practices or services when such accommodations may be necessary to afford a person an equal opportunity to use and enjoy a dwelling in violation of the FHA, 42 U.S.C. §3604(f)(3)(B); and

    c.  interference with the rights of persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged persons with disabilities in the exercise of enjoyment of rights granted or protected by the FHA in violation of 42 U.S.C. §3617.

52. Defendant's actions described above were intentional and taken with willful disregard for Plaintiffs' rights.

53. Plaintiffs are aggrieved persons, as defined in 42 U.S.C. § 3602(i), who have suffered economic loss, emotional distress, and loss of their civil rights as a result of Defendant's conduct.

54. Plaintiffs are without an adequate remedy at law.

55. Plaintiffs will suffer irreparable harm if Defendant refuses to grant the permits and certificate of zoning compliance necessary to permit construction and operation of RAVE's proposed group home.

56. WHEREFORE, Plaintiffs pray that this Court enter an ORDER:

    a.  Declaring the Defendant's actions violate the Fair Housing Act;

    b.  Granting a preliminary and permanent injunction enjoining Defendant to issue the necessary building and special use permits and a certificate of zoning compliance to permit RAVE to construct and operate its group home in the City of Anna, Illinois;

      c.      Awarding Plaintiffs such damages as would fully compensate them for their injuries caused by Defendant's discriminatory housing practices;

      d.      Awarding Plaintiffs their costs, expenses, and reasonable attorney's fees; and

      e.      Granting any additional relief as the Court deems just and proper.

### COUNT TWO: AMERICANS WITH DISABILITIES ACT

57.      The allegations listed above are incorporated herein by reference.

58.      The prospective residents of the home, including Plaintiff R.H., are "qualified individuals with a disability" within the meaning of 42 U.S.C. § 12131(2) and 28 C.F.R. § 35.104.

59.      Defendant City of Anna is a "public entity" within the meaning of 42 U.S.C. § 12131(1).

60.      Defendant's zoning activities, including the enactment of zoning ordinances; administrative processes, hearings, findings, and recommendations by either its Zoning Administrator or its Zoning Board of Appeals; and decisions by its City Council, are "services, programs, or activities" of a public entity within the meaning of 42 U.S.C. § 12132.

61.      Defendant City of Anna's actions described above:

      a.      constitute discrimination in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. Part 35;

      b.      exclude qualified individuals with disabilities from participation and deny them the benefits of the services, programs, or activities of a public entity on the basis of disability in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(a);

c.    afford qualified individuals with disabilities an opportunity to participate in or benefit from the services of a public entity that are not equal to those afforded others in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(1)(ii);

d.    otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(1)(vii);

e.    fail to make reasonable modifications in policies, practices, or procedures necessary to avoid discrimination on the basis on disability in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(7);

f.    utilize methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination of the basis of disability in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(3);

g.    exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(g); and

h.    interfere with an individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the ADA in violation of Title V of the ADA, 42 U.S.C. § 12203(b).

62.     Defendant's actions described above were intentional and taken with willful disregard for Plaintiffs' rights.

63.     Plaintiffs are "person[s] alleging discrimination on the basis of disability" within the meaning of 42 U.S.C. § 12133 who have suffered harm and damages by Defendant's actions described above.

64.     Plaintiffs are without an adequate remedy at law.

65.     Plaintiffs will suffer irreparable harm if Defendant refuses to grant the permits and certificate of zoning compliance necessary to permit construction and operation of RAVE's proposed group home.

66.     WHEREFORE, Plaintiffs pray that this Court enter an ORDER:

        a.     Declaring the Defendant's actions violate the American's with Disabilities Act and its implementing regulations;

        b.     Granting a preliminary and permanent injunction enjoining Defendant to issue the necessary building and special use permits and a certificate of zoning compliance to permit RAVE to construct and operate its group home in the City of Anna, Illinois;

        c.     Awarding Plaintiffs such damages as would fully compensate them for their injuries caused by Defendant's discriminatory housing practices;

        d.     Awarding Plaintiffs their costs, expenses, and reasonable attorney's fees; and

        e.     Granting any additional relief as the Court deems just and proper.

### COUNT THREE:  SECTION 504 OF THE REHABILITATION ACT

67.     The allegations listed above are incorporated herein by reference.

68.     On information and belief, the Defendant is a recipient of federal financial assistance.

69.     The prospective residents of the home, including Plaintiff R.H., are "qualified individuals with a disability" within the meaning of 29 U.S.C. § 794(a).

70.     Defendant's zoning activities, including the enactment of zoning ordinances; administrative processes, hearings, findings, and recommendations by either its Zoning Administrator or its Zoning Board of Appeals; and decisions by its City Council, are "programs or activities" of a unit of local government within the meaning of 29 U.S.C. § 794(b)(1)(A).

71.     Defendant City of Anna's actions described above:

a.     constitute discrimination in violation of Section 504 of the Rehabilitation Act of 1973 as amended, 29 U.S.C. § 794, and its implementing regulation, 24 C.F.R. Part 8;

b.     exclude qualified individuals with disabilities from participation in and deny them the benefits of the services, programs, or activities receiving federal financial assistance on the basis of disability others in violation of Section 504, 29 U.S.C. § 794, and its implementing regulation, 24 C.F.R. 8.4(b)(1)(i);

c.     afford qualified individuals with disabilities an opportunity to participate in or benefit from the services, programs, or activities receiving federal financial assistance that are not equal to those afforded others in violation of Section 504, 29 U.S.C. § 794, and its implementing regulation, 24 C.F.R. 8.4(b)(1)(ii);

d.     otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service in violation of Section 504, 29 U.S.C. § 794, and its implementing regulation, 24 C.F.R. 8.4(b)(1)(viii); and

e.      fail to make reasonable modifications in policies, practices, or procedures necessary to avoid discrimination on the basis of disability in violation of Section 504, 29 U.S.C. § 794, and its implementing regulations, 24 C.F.R. § 8.3, 24 C.F.R. 8.24, 24 C.F.R. § 8.28, and 24 C.F.R. § 8.33.

72.      Defendant's actions described above were intentional and taken with willful disregard for Plaintiffs' rights.

73.      Plaintiffs are "persons aggrieved" within the meaning of 29 U.S.C. § 794a(a)(2) who have suffered harm and damages by the actions of Defendant described above.

74.      Plaintiffs are without an adequate remedy at law.

75.      Plaintiffs will suffer irreparable harm if Defendant refuses to grant the permits and certificate of zoning compliance necessary to permit construction and operation of RAVE's proposed group home.

76.      WHEREFORE, Plaintiffs pray that this Court enter an ORDER:

a.      Declaring the Defendant's actions violate Section 504 of the Rehabilitation Act and its implementing regulations;

b.      Granting a preliminary and permanent injunction enjoining Defendant to issue the necessary building and special use permits and a certificate of zoning compliance to permit RAVE to construct and operate its group home in the City of Anna, Illinois;

c.      Awarding Plaintiffs such damages as would fully compensate them for their injuries caused by Defendant's discriminatory housing practices;

d.      Awarding Plaintiffs their costs, expenses, and reasonable attorney's fees; and

e.      Granting any additional relief as the Court deems just and proper.

## JURY DEMAND

77.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs respectfully

demand a trial by jury on all issues triable by a jury.

Respectfully submitted,

Law Offices of Thomas E. Kennedy, III, L.C.

By: /s/ Thomas E. Kennedy III_____
Thomas E. Kennedy, III
Sarah Jane Hunt
906 Olive St., Ste. 200
St. Louis, MO 63101
(314) 872-9041
(314) 872-9043 fax
tkennedy@tkennedylaw.com
sarahjane@tkennedylaw.com

Attorneys for Plaintiffs